N. A. JACKSON and others v. S. J. SLOAN and others.

*Lien of Judgment -- Sale of Property Subject to Lien by Judgment Debtor -- Injunction.*

**1.** Where a debtor whose real estate is encumbered with a judgment lien sells a portion of it, a judgment creditor who has a lien upon the whole land is compelled to exhaust the unsold portion for the satisfaction of his judgment before resorting to that which has been sold.

**2.** This however is not to be done when it trenches upon the rights or operates to the prejudice of such judgment creditor.

**3.** So where A obtained judgment against two partners and under execution issued thereon certain real estate (alleged to be the property of the partners, which allegation was not sufficiently denied in the answer) was sold by the Sheriff who held the proceeds of sale; *Held,* in an action by B (who had purchased from the partners certain other real estate on which the lien of A's judgment rested) to restrain A from selling under his execution the land purchased by plaintiff, that A should be restrained from selling until an account could be taken of the fund in the hands of the Sheriff and a distribution made of the same, so as to ascertain whether or not A's judgment would be satisfied therefrom.

(*Roberts* v. *Oldham,* 63 N C. 297, cited and approved )

APPEAL from an ORDER vacating an Injunction, made on the 29th of November, 1876, at Chambers in Charlotte by *Schenck, J.*

The action was commenced in the Superior Court of Gaston County. The controversy in this appeal is between the plaintiff Jackson and the defendant S. J. Sloan. Sloan obtained a judgment against the firm of J. & E. B. Stowe, which constituted a lien upon the "Stowesville Factory" belonging to the firm. Afterwards Jackson purchased of J. & E. B. Stowe the factory in question and of course subject to the lien of the judgment. Sloan had caused an execution to be issued for the sale of this property for the satisfaction of his debt. Jackson applied for an injunction against the sale

and obtained a restraining order until Sloan could show cause. Upon his answer coming in the restraining order was vacated and the injunction refused and from this the plaintiff appealed to this Court.

The complaint alleged as the grounds for an injunction that besides the "Stowesville factory" the firm of J. & E. B. Stowe also owned another valuable property known as the "Spring Shoal" tract of land which was subject in like manner to the lien of the Sloan judgment; and that since his purchase of the factory this latter tract of land has been sold under executions issued upon the Sloan and other judgments and the proceeds of sale amounting to $12,000 are now in the hands of the Sheriff of Gaston County and held subject to the discharge of these judgments in such order as the Court may direct. The complaint further alleges that this fund is sufficient to pay the Sloan judgment and all other liens upon the factory property which the plaintiff had purchased.

The answer of Sloan denies that the "Spring Shoal" tract belonged to the firm of J. & E. B. Stowe and avers that it was the separate property of J. Stowe; and it denies that the proceeds of its sale are sufficient to satisfy all the liens upon it of a prior dignity to the Sloan judgment and the Sloan debt also. The answer however *does not deny* the allegation that the "Spring Shoal" tract was sold under executions issued upon the *Sloan* and other judgments; and it admits that Sloan has caused an execution to issue upon the judgment and is threatening to sell under it the "Stowesville Factory" theretofore purchased by the plaintiff.

His Honor vacated the restraining order and refused the injunction as aforesaid. From this ruling the plaintiff appealed.

*Mr. J. W. Hinsdale,* for plaintiff.
No counsel for defendants.

Bynum, J. (After stating the facts as above.) Upon this state of facts the plaintiff demands that the defendant Sloan be enjoined from selling the "Stowesville Factory " and be compelled *first* to look to the fund arising from the sale of the "Spring Shoal" tract for the satisfaction of his judgment. The question is whether the plaintiff is entitled to this relief. From the admissions expressed and implied in the answer, we think he is.

What are the obstacles preventing the Sheriff from paying out the "Spring Shoal" fund in discharge of the executions under which that property was sold, does not appear. As from the defendant's not denying it, we are to assume that this sale was in part at his instance and under his judgment, it was his duty to explain why he abandoned his claim to the satisfaction of his debt out of that fund and now resorts to another. It may be that in due course of disbursement by the Sheriff it would have satisfied the defendant's judgment and disencumbered the land purchased by the plaintiff. The sale of the "Spring Shoal" having been made at the instance of the defendant and for the satisfaction of his debt, it is certainly not inequitable to restrict him to that fund until it is exhausted, without reaching and discharging his judgment. For otherwise the rights of the subsequent purchaser of the "Stowesville Factory," would be necessarily affected by the continuing lien of a judgment which the fund ought to have discharged.

The ground upon which the defendant resists an injunction against his selling the "Stowesville Factory," is the alleged fact that the "Spring Shoal" is the separate property of J. Stowe and primarily liable for his separate debts, and the further fact that the fund arising from that sale is insufficient to pay his debt according to the priority of lien. *Roberts* v. *Oldham*, 63 N. C. 297.

If these two facts clearly appeared to the Court, it would be a sufficient answer to the application of the plaintiff.

But the complaint *specifies* the judgments which are a lien upon the "Spring Shoal," whether considered as firm or separate property and shows therefrom in detail that the fund is sufficient to discharge all the liens prior to and including the Sloan debt. The answer to this by the defendant is general. It neither denies the particulars set out, nor specifies a single judgment in addition to those named by the plaintiff, which constitutes a lien prior to his own upon either the firm or separate property of J. and E. B. Stowe. And whether the "Spring Shoal" fund is sufficient to reach and pay his judgment, can be best ascertained by the actual disbursement of that fund according to the legal priorities of the claimants.

It is reasonably clear from the whole case that this fund will discharge the Sloan judgment all or in part. This judgment against the firm is a lien both upon the partnership and separate property with this difference in equity, that the partnership is the primary and the separate property the secondary fund for the payment of a firm debt. If therefore it had clearly appeared that the "Spring Shoal" was the separate property of J. Stowe and that the defendant with others had not in the first instance resorted to and sold it for the payment of his debt, there is no principle upon which the Court can compel the defendant to seek satisfaction out of a secondary instead of the primary fund, to-wit; the "Stowesville Factory," although the subsequent purchaser should be discommoded by its sale. But the answer to the complaint does not sufficiently negative the allegation that the "Spring Shoal" was the property of the firm. Assuming then that both the "Stowesville Factory" and the "Spring Shoal" were partnership property the rule of equity is, that when one creditor can resort to two funds for the satisfaction of his debt, and another to one only of the funds, the former shall first resort to the fund upon which the latter has no claim, as that by this means of distribution both may

be paid. And it is an analagous principle of equity that where a debtor whose lands are encumbered by a judgment lien sells one portion of it, the creditor who has a lien upon that which is sold aud upon that which is unsold, shall be compelled to take his satisfaction out of the undisposed of land, so that thus the creditor and the purchaser both may be saved. *Rollins* v. *Thompson*, 21 Miss. 521 ; *Russell* v. *Howard*, 2 McL. 489 ; *Alston* v. *Munford*, 1 Brock. 267 ; Herman on Ex. § 224. But this however is never done when it trenches on the rights or operates to the prejudice of the party entitled to go upon both funds. *Meech* v. *Allen*, 17 N. Y. 300 ; *United States* v. *Duncan*, 4 McL. 607 ; *McCulloch* v. *Dashiell*, 1 Harris & Gill, 96.

No appreciable injury to the defendant can arise here, for his lien extends to both funds which are amply sufficient to secure his debt. He can lose nothing then by awaiting the legal disposition of the "Spring Shoal" fund before resorting to the factory property. The delay, if it operates as such, is an incident common to the complications of a large insolvent estate and cannot ordinarily be avoided. Whether the plaintiff is pursuing the speediest way to disencumber his purchase and get a good title instead of subrogating himself to the rights of the defendant by the purchase and assignment of his judgment, it is unnecessary to inquire. As the plaintiff has with notice and voluntarily purchased and put himself in his present situation and the defendant is in no default, the latter ought not to be subject to any costs or charges in or about this proceeding. Therefore before an injunction is allowed the plaintiff must give bond to indemnify and save harmless the defendant Sloan against any and all costs of this suit and any loss which may result from granting the injunction. Subject to these conditions the plaintiff is entitled to an injunction restraining the defendant S. J. Sloan from selling the "Stowesville Factory" property until an account is taken of the fund in the hands of

the Sheriff of Gaston County and the judgments which constitute a lien thereon, and the disbursement of the fund according to the priorities of the judgments.

There is error. Judgment reversed and cause remanded to be proceeded with in accordance with this opinion.

PER CURIAM. Judgment reversed.