The case presented in the complaint is this:
In pursuance of an agreement entered into between the plaintiff T. L. Francis and the defendant J. P. Herren, and reduced to writing, the latter and his wife M. J. Herren, on 20 November, 1886, executed a bond — the said M. J. Herren being privily examined and giving her assent thereto — covenanting therein, upon payment of the purchase money, to make title to a certain described tract of land in the county of Haywood.
The plaintiff, immediately after the execution of the bond for title and after ascertaining the location and boundaries of the land (498) by actual survey, entered thereon and has since held absolute, notorious and open possession, claiming under his purchase.
The bond for title, upon proof of execution and after the private examination of the feme obligor, as required in conveyances of real estate, was, on 7 March, 1888, duly admitted to registration in the county aforesaid, and the payment of the whole purchase money made on or about 19 March, 1887, when a demand for a deed for the premises was made and refused.
Divers judgments were recovered by creditors against the vendor, J. P. Herren, and docketed in the Superior Court of Haywood, intermediately between the execution and registration of the bond, which are specified in detail, and the plaintiffs in which are made defendants in this action, under executions issuing, on many or all of which the sheriff is proceeding to make sale in order to their satisfaction. The plaintiff, after specifying certain real and personal estate belonging to the debtor and liable to his debts, and among such, notes, bonds, money and accounts, demands the cancellation of certain instruments, made, it is asserted, to defraud creditors; the appointment of a receiver to take charge of said property and apply the same to the judgment liens in exoneration of the land so bought by the plaintiff; the issue of an order to the sheriff restraining him meanwhile from selling said land, until the debtor's other property can be thus applied, and for general relief. Such is the general scope and purpose of the action, the answers to which, put in by the vendors and the creditors, denying imputations of fraud, it is unnecessary to give in detail.
The cause was referred, at Spring Term, 1888, to J. C. L. Gudger and W. L. Norwood, to state and report "an account of all the moneys, rights and credits, choses in action, lands and tenements, bonds for land or other interest, either in law or equity, the said J. P. Herren and M. J. Herren had or claimed at the commencement of this action, or (499) now have or claim, and also what property they have disposed of *Page 397 
since the execution to the plaintiffs of the bond for title," and the interlocutory order or injunction before issued continued to the hearing.
The referees made their report at Fall Term, 1888, with the voluminous evidence taken during their sittings, with their findings of fact and conclusions of law as follows:
1. That on 14 July, 1876, the defendant J. P. Herren purchased from J. C. Smathers a tract of land on Raccoon Creek in Haywood County, containing two hundred and thirteen acres more or less.
2. That at the time of the sale by Smathers to J. P. Herren, they estimated the land at the sum of two thousand dollars, and that the conveyance was made to Herren upon his paying to Smathers $1,000, the remaining $1,000 not being required to be paid in consequence of the fact that Herren had married the daughter of Smathers, he, Smathers, intending in this way to benefit his daughter by making this conveyance to her husband.
3. That on 12 October, 1886, the plaintiff Leroy Francis and the defendant J. P. Herren entered into the contract for the sale of a portion of said land to said plaintiff, which contract is set forth in the complaint.
4. That in pursuance of said contract a survey and computation of the area was made, and the lands embraced in the contract were ascertained to contain one hundred and thirty-six and seven-tenths acres, and on 20 November, 1886, the defendants J. P. and M. J. Herren executed their bond for title to the plaintiffs Leroy and Josiah Francis, for said tract of land, for the sum of $25 per acre.
5. That the purchase money for said land was fully paid by plaintiffs to the defendant J. P. Herren, by February, 1887.
6. That at the time of the execution of the said bond for title (500) there existed as liens against said property a judgment in favor of Carhart Co., against one A. L. Herren and the defendant J. P. Herren as stay, for the sum of one hundred and twelve dollars and sixty-one cents, and $1.85 costs, and one judgment in favor of officers of court against J. P. Herren for $4.98.
7. That the mortgage executed to H. N. Wells, chairman of the board of county commissioners, for the sum of $2,500.00 (Exhibit "D" of the complaint), has been fully satisfied.
8. That all the other judgments mentioned in the complaint were docketed subsequently to the execution of the said bond for title, and before the registration of the same.
9. That on 4 August, 1884, the defendant J. P. Herren bought from the county of Haywood the old courthouse and lot, and took the bond for title to same, signed by the board of county commissioners for said *Page 398 
county; and on 10 September, 1887, said Herren assigned the said bond to his wife, the defendant M. J. Herren.
10. That of the purchase money for said courthouse lot ($701) the sum of $377.68, with interest on $314.15 from 12 September, 1887, and $19.24 costs, is still due and unpaid.
11. That on 20 January, 1886, the defendant purchased a lot back of and adjoining the said courthouse lot, from J. K. Boone, for $85.
13. That on 21 September, 1887, the said defendant J. P. and M. J. Herren executed to Israel Whitehill a mortgage deed upon the courthouse lot to secure the sum of six hundred and seventy-eight dollars and forty cents, with interest from that date, which mortgage was registered on 22 September, 1887.
15. That on 1 January, 1887, the defendant J. P. Herren was the owner of a tract of land, part of his purchase from J. C. (501) Smathers, made in 1876, which on the said day, the said J. P. Herren and wife, M. J. Herren, sold to W. P. Underwood, and gave their bond for title upon the payment of $1,116.75; said bond was filed for registration 13 June, 1887, and was registered in the register's office of Haywood County on 10 March, 1888, and said tract contains forty-nine and five-eighths acres.
22. That the assignment by the defendant J. P. Herren to his wife, M. J. Herren, on 10 September, 1887, of the bond for title for the courthouse property was so made in order to reimburse her for her supposed interest in the lands conveyed to said J. P. Herren by J. C. Smathers in the year 1876, and which said Herren had sold.
25. That on 16 January, 1888, the defendant J. P. Herren sold a stock of goods to one T. W. Davis for the sum of $1,140, and at the same time took his notes for $1,000 of the price of said stock, payable to the defendant, M. J. Herren, in order to indemnify her against loss by reason of her having joined in the mortgage to Whitehill on 21 September, 1887, of the courthouse property.
29. That the real estate included in the testimony and claimed or owned by defendants J. P. and M. J. Herren is worth as follows:
 One-Seventh of E. B. Herren's farm .................. $1,428.57 One-Seventh of National Hotel lots .................. 500.00 Courthouse proper and back lot ...................... 3,000.00 Land bonded to W. P. Underwood ...................... 1,116.75 Land bonded to plaintiffs ........................... 3,417.50 No evidence as to one-half of tan-yard lot .......... ---------- Aggregating ..................................... $9,462.82 *Page 399 
From the foregoing facts, we conclude as matter of law:
1. That the defendant M. J. Herren did not take any interest, either legal or equitable, in the Turner lands sold by J. C. Smathers to the defendant J. P. Herren, as against purchasers for value (502) and creditors.
2. That the assignment of the bond for title to the courthouse property, made by J. P. Herren to the said M. J. Herren, was voluntary, and was without value or legal consideration, and is void as to creditors.
3. That the notes given by T. W. Davis for the stock of goods are the property of J. P. Herren, so far as the rights of creditors are involved, there having been no consideration moving from her, M. J. Herren, but, on the contrary, the notes having been given for the goods of J. P. Herren.
4. That the paper writing signed by J. P. Herren, and copied in the 21st finding of fact, does not operate either as a release or a conveyance of the said J. P. Herren's interest in the lands descended from the late E. B. Herren, and that said J. P. Herren is the owner in fee of one-seventh of all the lands so descended from said E. B. Herren, his father.
The defendants J. P. Herren and M. J. Herren excepted to the report of the referees filed in this cause:
1. That the defendant J. P. Herren excepted to the 5th finding of fact by said referees, as the same is contrary to evidence.
2. That the defendants J. P. Herren and M. J. Herren except to item 15 of said report, as the evidence shows that M. J. Herren was the equitable owner of one-half the tract of land sold to W. P. Underwood.
3. That said defendants except to the first finding of law by referees, as the same is erroneous in law.
4. That said defendants except to the second conclusion of law, as the same is erroneous.
5. That the third and fourth conclusions of law by said referee are erroneous.
The court rendered the following judgment:
"This cause coming on to be heard upon the report of the (503) referee, and the exceptions of the plaintiffs and the defendants filed thereto, and being heard, it is now considered and adjudged, that the exception of the plaintiffs be and the same is hereby overruled; and it is further considered and adjudged, that the first exception of the defendants J. P. Herren and M. J. Herren be sustained, and the second, third, fourth and fifth exceptions filed by said defendants be and the same are hereby overruled; and it is further considered and adjudged, that the defendant J. P. Herren is the legal owner of the tracts of land *Page 400 
on Raccoon Creek, in Haywood County, North Carolina, known as the `Turner Farm,' and which the plaintiffs and W. P. Underwood hold contracts for sale and bond for title; and all judgments docketed prior to the registration of the contracts for sale and bonds for title are liens on said lands; also, that the said J. P. Herren is the owner in fee simple of one-seventh undivided interest in the tract of land in Haywood County known as the `E. B. Herren Farm'; and also one-seventh undivided interest in the town lots, in the town of Waynesville, known as the `National Hotel lots,' and also one-seventh of one undivided half interest in twelve acres of land near the town of Waynesville, known as the `Tan-yard Lot'; and that the judgments mentioned in the complaint constitute a lien on the same; also, one lot in the town of Waynesville, back of the old courthouse lot, being the same purchased by J. P. Herren from J. K. Boone, and that the said judgments constitute liens upon the same according to the priority of their docketing, subject to the balance due on the mortgage of J. M. Moody.
"It is further considered and adjudged, that the defendant J. P. Herren is the equitable owner of the lot in the town of Waynesville, and the improvements thereon, known as the old courthouse lot, and that said judgments constitute a lien upon the same, according to the priority of their docketing, subject to the payment of balance due to the (504) board of commissioners of Haywood County of the purchase money for the same; and also balance of the debt to W. E. Weaver and George A. Shuford, after admitting the credits set forth in the said referees' report; and also that the said J. P. Herren is the equitable owner of one undivided seventh interest in the two hundred acres of land on Raccoon Creek, being a part of the `E. B. Herren Farm,' on which his homestead has been set apart; and it is further considered that the said J. P. Herren is the owner of the personal property, notes, judgments, accounts and choses in action mentioned in referees' report, including the notes of T. W. Davis and one hundred dollars deposited with G. H. Smathers, which were not included in his personal property exemptions, set apart to him by the sheriff of Haywood County.
"It is further considered and adjudged, that the mortgage executed to H. N. Wells, chairman of the board of county commissioners, for the sum of two thousand five hundred dollars, and filed with the plaintiffs' complaint as Exhibit `D,' has been fully satisfied, and the board of commissioners of said county are ordered and directed to cancel the same of record.
"It is further considered, ordered and adjudged, that the judgment creditors of J. P. Herren, who are parties to this action, may, and they are hereby directed, first, to sell all the legal estate of the said J. P. *Page 401 
Herren outside of the `Turner Farm,' bonded to the plaintiffs and James Underwood and W. P. Underwood, except that portion which has heretofore been laid off and set apart to J. P. Herren as his homestead.
"It is further ordered, adjudged and decreed that the real estate in which the said J. P. Herren has an equitable estate as in this judgment declared, to be sold subject to his homestead, and the proceeds of the sale of the lot known as the courthouse lot shall be applied, 1st, to the payment of the debt due the board of commissioners of Haywood County, being the balance of the purchase money.2d. Then to the discharge of the balance of the said debt due to W. E. Weaver (505) and G. A. Shuford, secured by said deed of trust to J. M. Moody, and then to the discharge of said judgments according to priority of their docketing, and that the proceeds of the sale of the said J. P. Herren's equitable interest in the other lands as herein declared shall be applied to the payment of said judgments according to the priority of their docketing, and Geo. A. Shuford is hereby constituted and appointed a commissioner of this court to make said sale."
[He was also appointed receiver, with the usual powers, of the personal property, etc.]
"It is further ordered and adjudged, that the restraining order heretofore granted against J. P. Herren and M. J. Herren be continued until the further orders of this court, except such property as has heretofore been set apart as the personal property exemptions and homestead of the said J. P. Herren.
"It is further ordered, adjudged and decreed that W. B. Carhart and W. E. Carhart, trading as Carhart Co., be restrained from selling under execution until the property of A. L. Herren is exhausted, and until the further orders of this court.
"It is further ordered, adjudged and decreed that the said" (other judgment creditors, naming them) "be restrained and enjoined from selling under execution the land known as the `Turner Farm,' contracted to be sold to the plaintiffs, and for which they hold bond for title, until the other property of the said J. P. Herren is exhausted, and until the further orders of this court; and that J. M. Moody, trustee, be enjoined from selling under the deed of trust to him executed until the further orders of this court.
"It is further ordered and adjudged, that the board of county commissioners of Haywood County be restrained from selling the courthouse lot until the further orders of this court, and that they also be enjoined from selling under execution any of the lands for (506) which the plaintiffs hold J. P. Herren's bond for title until after the other property of said J. P. Herren is exhausted, and until the further orders of this court. *Page 402 
"It is further ordered, that the referees, J. C. L. Gudger and W. L. Norwood, be allowed one hundred dollars each, and the commissioner and receiver is hereby directed to pay said allowance out of the first moneys which shall come to his hands, the said allowance to be taxed as costs, and abide the result of the final decree in this cause."
From this judgment both parties appealed.
By an act of the General Assembly, passed at the session of 1885, ch. 148, it is provided that "no conveyance of land nor contract to convey or lease land for more than three years shall be valid to pass any property, as against creditors or purchasers for a valuable consideration from the donor, bargainor or lessor, but from the registration thereof within the county wherein the land lieth," with certain qualifications not pertinent to the present case.
Two of the judgments held by defendants were docketed before the making of the contracts with the plaintiffs, according to the referees' finding — one in favor of Carhart Co. for $112.61, and costs, against A. L. Herren and the defendant J. P. Herren, as a stay thereto, and the other in favor of the officers of the court for $4.98, against the latter alone, for costs incurred by him.
The other numerous judgments reported were docketed after (507) the making the contract, but before the registration of the bond on 7 March, 1888.
Under the statute, therefore, all the docketed judgments have a preferable lien to that acquired by the plaintiffs by the registration of their bond. Some criticism was made in the argument upon the words of the statute, which its construction, in our opinion, does not warrant, and we must give it an import and scope commensurate with similar language employed in reference to mortgages and deeds in trust — The Code, sec. 1254 — and to conditional sales of personal property — section 1275.
The want of registration does not invalidate the instrument so that creditors, merely as such, may treat it as a nullity in a collateral proceeding; but it is void against proceedings instituted by them and prosecuted to a sale of the property or acquirement of a lien, as against all who derive title thereunder. Boyd v. Turpin, 94 N.C. 137; Brem v.Lockhart, 93 N.C. 191.
The present action, which proposes to require that the creditors, having acquired a prior lien upon the land embraced in the contract of *Page 403 
sale to the plaintiffs, shall exhaust all the other property of the debtor liable to his creditors before proceeding to sell under the executions in the sheriff's hands, is based upon the equitable principle thus enunciated by Bynum, J., in Jackson v. Sloan, 76 N.C. 306:
"It is an analogous principle of equity that when a debtor, whose lands are encumbered by a judgment lien, sells one portion of it, the creditor who has a lien upon that which is sold and upon that which is unsold, shall be compelled to take his satisfaction out of the undisposed of land, so that thus the creditor and the purchaser both may be saved" — citing several authorities, to which may be added 2 Story Eq. Juris., sec. 1233 a.
But upon this is put the restriction mentioned in the opinion (508) and following the words quoted: "But this is never done when it trenches on the right or operates to the prejudice of the party entitledto go upon both funds," fortified also by cited cases.
Thus far, and no farther, does the doctrine go which puts one fund in front of the other, so that without disturbing priorities levied to secure the application of both to the secured debts.
But the creditor may not be delayed or needlessly obstructed in the adjustment of the equity between the other creditor and himself. Now the present suit, utterly ignoring the limits of the equity, seeks to suspend the action of the judgment creditors, until all the estate of the debtor J. P. Herren has been ascertained and applied to the preferred creditors, and this is accordingly done by the exercise of the restraining power of the court, the results of which will be manifest from the inquires prosecuted before the referees and their findings shown in their report. The controversy is thus made to involve the settlement of the estate of a living party among his judgment creditors, and in which numerous disputes have arisen as to the validity of the debtor's title to some of the property claimed by others, and the amount of debts due and owing to him, which may be difficult of adjustment and cause long delay, those having a direct and expeditious remedy under execution are to be kept back and not allowed to assert their legal rights. The controversies that have sprung up are mostly among the defendants themselves, and inuring to the plaintiffs' benefit only as it prevents the immediate sale of the land purchased by them, but whose title is in subordination to the creditors' judgment liens.
The only relief open to the plaintiffs is not in an interruption of the executions, but in a mandate requiring the sale of such property as the debtor has and is subject to execution to be made, before proceeding to the sale of the land sold to the plaintiffs, and this (509) without hindrance in the prompt making of the money due the execution creditors. *Page 404 
All the directions in the judgment that go beyond this limit are unauthorized, and must be reversed. There should be no restraint imposed upon any of the defendants, except as they may be applied by the requirement that the sheriff postpone the sale of the plaintiffs' land until he has first disposed of property of the defendants which he may rightfully seize and sell, and which are not under lien to others, and this without a determination of the conflicting claims of the debtor and others to any portion of it. This dispenses with an examination of the various exceptions of different parties, and disposes of the action. The affidavit is insufficient to warrant the issue of the writ of certiorari. The judgment, except in the allowance to the commissioners, must be reversed, and the case proceed in accordance with the law declared in this opinion.
Error.
Cited: Stancill v. Spain, 133 N.C. 80; Trust Co. v. Sterchie,169 N.C. 24; Realty Co. v. Carter, 170 N.C. 7, 266.